

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ZARAGON HOLDINGS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 08-CV-111 |
| vs. | ) |
| | ) Judge Joan H. Lefkow |
| INDIAN HARBOR INSURANCE CO., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Zaragon Holdings, Inc. ("Zaragon") filed a fourth amended two-count complaint against Indian Harbor Insurance Company ("Indian Harbor"), alleging that Indian Harbor wrongfully denied an insurance claim for damage to property owned by a Zaragon subsidiary. Count I of the complaint is a claim for breach of contract, and Count II is a claim under Kentucky statutory and common law for bad faith settlement practices. Before the court is Indian Harbor's motion for partial summary judgment. For the reasons stated below, the motion [#92] is granted.

## BACKGROUND[1]

Indian Harbor is in the business of underwriting and issuing insurance policies covering losses due to property damage. Prior to September 23, 2006, Indian Harbor sold an insurance

---

[1] In response to Indian Harbor's Statement of Undisputed Facts, Zaragon filed "Plaintiff's Concise Response to Defendant's Statement – Motion for Partial Summary Judgment," which appears to respond to the paragraphs in Indian Harbor's Motion for Summary Judgment and not its Statement of Undisputed Facts. Under Local Rule 56.1, all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by a statement of the opposing party. As Zaragon's filing does not properly respond to Indian Harbor's statement of facts, these factual allegations are deemed admitted to the extent they are supported by the record. *See I.A. Rana Enters., Inc. v. City of Aurora*, 630 F. Supp. 2d 912, 916 (N.D. Ill. 2009) ("If a nonmovant fails to properly respond to a movant's 56.1(a)(3) statement, the movant's factual allegations are deemed admitted.").

1

policy to Zaragon providing coverage for an apartment complex in Louisville, Kentucky that was owned by a Zaragon subsidiary. The policy was for a one-year term, from August 15, 2006 to August 15, 2007. Under this policy, Indian Harbor agreed to cover any direct physical loss of or damage to the buildings in the apartment complex, as well as to personal property such as maintenance equipment or fixtures owned by Zaragon and located within the apartment complex. The policy stipulated, however, that certain types of property were not covered, including:

> g. Foundations of buildings, structures, machinery or boilers if their foundations are below:
>     (1)    The lowest basement floor; or
>     (2)    The surface of the ground, if there is no basement;
> h. Land (including land on which the property is located), water, growing crops or lawns;
> i. Personal property while airborne or waterborne;
> j. Bulkheads, pilings, piers, wharves or docks;
> k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether [Zaragon] can collect on it or not) from that other insurance;
> l. Retaining walls that are not part of a building;
> m. Underground pipes, flues or drains;
> . . .
> p. Vehicles or self-propelled machines (including aircraft and watercraft) . . .
> q. The following property while outside of buildings:
>     (1)    Grains, hay, straw or other crops;
>     (2)    Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

Ex. 14 to Def.'s Mem. at 6-7, hereinafter "Insurance Policy." The policy also excluded certain causes of loss from its grant of coverage. Among the exclusions relevant to this dispute were the following:

> "[Indian Harbor] will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> . . .
> g. Water
> - (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
> - (2) Mudslide or mudflow;
> - (3) Water that backs up or overflows from a sewer, drain or sump; or
> - (4) Water under the ground surface pressing on, or flowing or seeping through:
>   - (a) Foundations, walls, floors or paved surfaces;
>   - (b) Basements, whether paved or not; or
>   - (c) Doors, windows or other openings.

*Id.* at 30-31. The policy also limited coverage of damage to:

> c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
> - (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or
> - (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the buildings or structure.

*Id.* at 34.

In September 2006, a storm passed through the Louisville area and damaged the apartment complex. Rain from the storm damaged the carpeting, drywall, and baseboards of several ground floor unit apartments. These apartments did not show signs of drywall damage around windows or any damage to the patio sliding-glass doors. The pool cover and portions of the roofs of three buildings in the apartment complex were also damaged during the storm. Whether the roofs of the buildings showed signs of pre-existing wear and tear or were damaged

3

by wind or hail from the storm is an unresolved question. Following the storm, Zaragon submitted a claim to Indian Harbor for damages it alleges was directly caused by the storm.[2]

Indian Harbor investigated the damage in response to Zaragon's claim. It retained an independent adjuster, Benjamin Barnes, who arranged to inspect the claimed damage and interview Zaragon's personnel. At some point, Barnes contacted Chip Cunningham, a roofing expert who had worked on the roof of the apartment complex prior to the storm. At his deposition, Cunningham testified to the conditions of the roofs of the buildings in the apartment complex prior to the storm, and to his involvement with Zaragon staff before, during, and after the storm. With regard to water damage to the ground floor units, Cunningham testified:

> Q: Did you go into any apartments on the lower floors?
> A: Not that I remember.
> Q: So when you talk about water damage, you're not referring to any damage that may have occurred on floors other than -- the topmost?
> A: Yeah, the only thing I would have been concerned with . . . was on the top.
> Q: And the roof, of course.
> A: And the roof, right.

Ex. 20 to Def.'s Mem. at 68:8-17. Cunningham also submitted an affidavit to the court, in which he stated that "but for the driving rain that started on Friday, September 22, 2006, and ended late on Saturday, September 23, 2006, the property damage to [the apartment complex] would not have happened." Ex. 28 to Def.'s Mem. ¶ 6.

Barnes also contacted Renae Barkley, property manager for Zaragon's Kentucky holdings. Barkley compiled damage worksheets for all buildings in the apartment complex following the storm and submitted these worksheets to Barnes. These worksheets show that no patio doors were damaged during the storm but do corroborate Zaragon's claims that the

---

[2] In its amended claim for damages, Zaragon seeks $140,066.99

apartment units, pool cover, and roofs sustained damage at some point before or during the storm.

Zaragon's maintenance man, Robert Watson, who was at the apartment complex at the time of the storm, testified that he saw water enter the ground floor apartment units through the patio sliding-glass doors. Watson stated:

> Q: Did you see the water enter in – into apartments?
> A: Yes.
> Q: How'd it get in?
> A: Through the . . . doors.
> Q: [W]hen you say "doors," what kind of doors are these?
> . . .
> A: Just sliding-glass doors.
> . . .
> Q: So, the driving rain was such that the sewers, the drains, could not accommodate any more water into the Metropolitan Sewer District main drain.
> A: Exactly.
> . . .
> Q: One more question: The water that got into these . . . first-floor lower-level apartments, did it hit the ground first?
> A: Yes.
> Q: So it came in – or fell from the sky, hit the ground, and then whether it backed up from the . . . sewer or it couldn't get into the sewer, it was on the ground; and then it went under the doors or into the apartments. Is that the –
> A: Yes.
> Q: – to the best of your knowledge?
> A: Yes.

Ex. 10 to Def.'s Mem. at 18:14-25, 25:24-26:3, 30:5-16.

Finally, Robert J. Keany, the third-party administrator who advised Indian Harbor on whether or not it should provide coverage for all or part of Zaragon's claim, issued a formal report suggesting that Indian Harbor deny coverage. Keany based this report on information that had been transmitted to him via e-mail from Barnes, as well as color photographs that Barnes sent to Keany. Following this report, Indian Harbor concluded that the water damage to the

5

interior of the apartments resulted from standing water that leaked through patio doors into the units and was not caused by wind-driven rain or hail. Indian Harbor further concluded that the policy did not provide coverage for the pool or its covering. Based on its investigation, Indian Harbor denied Zaragon's claim entirely.

On December 7, 2007, Zaragon filed suit in the Circuit Court of Cook County, Illinois. Indian Harbor removed the case to this court pursuant to 28 U.S.C. § 1332 and moved to dismiss on the grounds that Zaragon failed to state a claim when it relied on Illinois law rather than Kentucky law. On April 25, 2008, this court ruled that Kentucky substantive law controls this suit and granted Zaragon leave to replead. *Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.*, No. 08 CV 0111, 2008 WL 1883472, at *5 (N.D. Ill. Apr. 25, 2008). Zaragon subsequently filed several amended complaints, and the court granted Zaragon leave to file its fourth and final amended complaint over Indian Harbor's objection. This fourth amended complaint contains two counts: a claim for breach of contract, and a claim under Kentucky statutory and common law for bad faith settlement practices.

## LEGAL STANDARD

Summary judgment is proper where the movant is entitled to judgment as a matter of law because "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). In determining whether there is such a genuine issue of fact, the court must "construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal quotation marks and citation omitted).

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). This burden is satisfied and summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. To avoid summary judgment, the non-moving party must therefore go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. This means that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## ANALYSIS

### I. Count I: Breach of Contract

Count I of Zaragon's fourth amended complaint seeks coverage for losses incurred due to water damage to the interior of several ground floor units, damage to a pool cover, and damage to the roofs of several buildings. Indian Harbor seeks summary judgment on Zaragon's claim for reimbursement for damage to the ground floor units and the pool cover but not damage to the roofs. Indian Harbor argues that the terms and conditions of the insurance policy at issue do not

7

provide coverage for Zaragon's losses with respect to the ground floor units because these losses were caused by surface water, which is an excluded cause under the policy. Similarly, Indian Harbor contends that the pool cover is not within the policy's grant of coverage.

**A. Ground Floor Units**

To survive summary judgment, Zaragon must raise an issue of fact as to whether water from a covered cause of loss damaged the ground floor units. While the insurance policy contains a clause absolving Indian Harbor of liability for "loss or damage caused directly or indirectly by . . . surface water,"[3] Insurance Policy at 30-31, wind-driven rain is a covered cause of loss under the policy. Zaragon therefore contends that damage to the ground floor units, particularly the carpets, drywall, and baseboards, was the result of wind-driven rain that entered into the apartments through the patio sliding-glass doors. For support, Zaragon relies on an affidavit from Chip Cunningham, who Zaragon claims is an expert in the roofing industry.

In his affidavit, Cunningham states that "the water damage . . . was caused by the driving rain that started on Friday, September 22, 2006 and ended late on Saturday, September 23, 2006." Ex. 28 to Def.'s Mem. ¶ 5. He further attests that "but for the driving rain . . . the property damage to buildings 9403, 9414 and 9419 would not have happened." *Id.* ¶ 6. Cunningham's affidavit, however, does not allege that driving rain caused water damage specifically to the ground floor units. To the contrary, Cunningham testified in his deposition that his statements refer only to damage to the top floors and roofsof the buildings in question, as

---

[3] Water that lands on the ground before causing damage is surface water. *See, e.g., Front Row Theatre, Inc. v. Am. Mfr's Mut. Ins. Cos.*, 18 F.3d 1343, 1347 (6th Cir. 1994) ("[S]urface waters are commonly understood to be waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence." (citation omitted) (internal quotation marks omitted)).

8

he did not enter any apartments on the lower floors of the buildings. More importantly, Cunningham nowhere opined that water entered *through* the patio sliding-glass doors. Under the insurance policy, damage caused by driving rain is covered only if "the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters." Insurance Policy at 34. Zaragon claims that Watson testified that he "saw damage from the storm cause water [to get] into the rooms," Pl.'s Resp. at 5, but Watson did not testify that the patio sliding-glass doors were damaged during the storm. In fact, Zaragon's property manager, Renae Barkley, testified that no patio doors were damaged during the storm. Zaragon has therefore not submitted sufficient evidence to survive summary judgment on its claim that wind-driven rain that entered through the patio sliding-glass doors damaged the ground floor units.

Further undercutting Zaragon's argument is Watson's testimony that the drains on the property were incapacitated by the volume of water from the storm, and that the water was not draining properly into the sewers. Improper drainage and blocked sewers essentially caused the rain to develop into surface water that seeped into the buildings. The fact that the initial cause of the surface water was a driving rain does not alter the analysis. *See* Insurance Policy at 30. ("[L]oss or damage [due to surface water] is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."). As Zaragon has presented no evidence indicating that damage from a covered cause of loss to the sliding-glass doors or any other part of the ground floor units allowed driving rain to enter those units, Zaragon is unable to support a key element of its claim. Indian Harbor's motion for summary judgment as to damage to the ground floor units will therefore be granted.

### B. Pool Cover

Zaragon also claims that it is entitled to $3,695.79 for damage to the cover of a pool in the complex. The terms and conditions of the insurance policy provide coverage for "direct physical loss of or damage to covered property." Insurance Policy at 5. The policy, however, does not provide coverage for the pool cover, and Zaragon has submitted no evidence that the pool cover is personal property that is included in the policy.[4] *See Ormond Country Club v. James River Ins. Co.*, No. 06-11376, 2008 WL 859482, at *3 (E.D. La. Mar. 27, 2008). Thus, Zaragon cannot recover under the policy for the pool cover and Indian Harbor's motion for summary judgment as to damages to the pool cover will be granted.

## II. Count II: Bad Faith Settlement Practices

Count II of Zaragon's fourth amended complaint claims Indian Harbor engaged in bad faith settlement practices in violation of Kentucky statutory and common law. Indian Harbor argues that it had reasonable cause to deny Zaragon's claim and did not perform any actions in violation of the Kentucky Unfair Claims Settlement Practices Act ("Claims Act")[5] or undertake any other vexatious practices.

---

[4] The insurance policy does not mention the pool. Covered property includes "[p]ersonal property . . . that is used to maintain or service the building or structure or its premises, including: (a) Fire extinguishing equipment; (b) Outdoor furniture; (c) Floor coverings; and (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering." The policy does not provide coverage for "land . . . bulkheads; pilings; piers; wharves or docks" among other types of personal property. *See* Insurance Policy at 5-6.

[5] The Kentucky Unfair Claims Settlement Practices Act, Ky. Rev. Stat. § 304.12-230, lists 17 actions that constitute unfair claims settlement practices. Among these are "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;" "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information;" and "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

In *Wittmer v. Jones*, the Kentucky Supreme Court ruled that the elements of a bad faith common law cause of action are the same as the elements of a Claims Act cause of action. 864 S.W.2d 885, 890 (Ky. 1993). The court therefore reviews Zaragon's statutory and common law bad faith claims under the same test. To recover on such a claim, Zaragon must establish that Indian Harbor was (1) obligated to pay the claim under the terms of the policy, (2) lacked a reasonable basis in law or fact for denying the claim, and (3) either knew there was no reasonable basis for denying the claim or acted with reckless disregard of whether such a basis existed. *Id.*

Whether Indian Harbor was required to pay the claim is a subject of this dispute. Zaragon cannot establish, however, that Indian Harbor lacked a reasonable basis in law or fact for denying the claim. Zaragon admitted that its claim was "fairly debatable as to the facts." Def.'s L.R. 56.1 Stmt. ¶ 41 (citing Pl.'s Mot. for Leave to File Fourth Am. Compl. At Law at 10). When an insurance claim is fairly debatable on its facts, a claim for bad faith settlement practices fails because "an insurer is entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1997); *see also Allstate Indem. Co. v. Shoopman*, No. 09-83-KSF, 2010 WL 567981, at *4 (E.D. Ky. Feb. 11, 2010). Thus, Zaragon cannot establish the second element of a bad faith settlement claim, and the court will grant Indian Harbor's motion for summary judgment on Count II.

## CONCLUSION AND ORDER

For the foregoing reasons, Indian Harbor's motion for partial summary judgment [#92] is granted. This case will be called on September 14, 2010 at 8:30 a.m. for a status hearing on final resolution of the case.

Dated: August 2, 2010        ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge